**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **LINDA LYNN COOK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-0571** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order filed September 14, 2007 (Document No. 5.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 16 and 19.)

The Plaintiff, Linda Lynn Cook (hereinafter referred to as "Claimant"), filed an application for SSI on April 8, 2005 (protective filing date), alleging disability as of January 1, 2005, due to nervousness, depression, and a lack of education.[1] (Tr. at 11, 52-55, 99, 110.) The claims were denied initially and upon reconsideration. (Tr. at 30-32, 40-42.) On October 27, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 43.) The hearing was held on November 15, 2006, before the Honorable Theodore Burock. (Tr. at 278-96.) By decision dated December 28, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-22.) The ALJ's decision

---

[1] In her Request for Reconsideration, dated June 23, 2005, Claimant reported additional disabling conditions to include crying spells, tremors, loss of concentration, and anxiety. (Tr. at 35.)

became the final decision of the Commissioner on July 25, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-6.) On September 14, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering

claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v.

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow

a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and

416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings

to determine whether the claimant has a medically determinable mental impairment and documents

its findings if the claimant is determined to have such an impairment. Second, the SSA rates and

documents the degree of functional limitation resulting from the impairment according to criteria as

specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

3

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from bipolar disorder, social anxiety disorder, and borderline intelligence, which were severe impairments. (Tr. at 13, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14-15, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity

to perform the exertional demands of work at any level. She reads at the high school level, spells at the 3rd grade level, and performs arithmetic at the 2nd grade level. She is limited to performing routine, repetitive tasks involving incidental public contact. She must avoid exposure to hazards such as unprotected heights and dangerous equipment.

(Tr. at 15, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work to which she could return. (Tr. at 20, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler, a kitchen worker, and a laundry worker, at the light exertional level. (Tr. at 20-21.) On this basis, benefits were denied. (Tr. at 21-22, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat

5

less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on December 16, 1952, and was 43 years old at the time of the administrative hearing. (Tr. at 20, 52, 281.) Claimant has an eighth grade, or limited, education, and no vocational training. (Tr. at 20, 115, 284.) In the past, she worked as a factory worker, but this work did not constitute past relevant work under the Regulations. (Tr. at 102.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's severe impairments by failing to acknowledge additional significant signs, symptoms, and limitations arising from her bipolar and anxiety disorders, and erred in his assessment of Claimant's true intellectual functioning; (2) finding that Claimant's impairments did not meet or medically equal Listings 12.04, 12.05C, and 12.06; (3) assessing Claimant's residual functional capacity ("RFC"); and (4) presenting hypothetical questions to the Vocational Expert ("VE"). (Document No. 16 at 6-25.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No.

19 at 8-20.)

1. <u>Severe Impairments</u>.

Claimant first alleges that the ALJ erred in assessing Claimant's severe impairments by failing to acknowledge additional significant signs, symptoms, and limitations arising from her bipolar and social anxiety disorders and erred in his assessment of Claimant's true intellectual functioning. (Document No. 16 at 6-13.) In her brief, Claimant identifies particular signs, symptoms, and limitations which the ALJ failed to address, including complaints of back and shoulder pain, irritability, mood swings, and panic attacks. (<u>Id.</u>) Claimant further asserts that the ALJ failed to note Dr. Steward's report that she had no intellectual strengths and found his IQ scores to be invalid though Dr. Steward did not. (<u>Id.</u> at 10-11.) She also asserts that the ALJ failed to mention factors supporting the diagnoses of major depressive disorder and anxiety disorder NOS as given by Samantha Mann, M.A., as well as her opinions that Claimant's social functioning was severely deficient and her persistence was moderately deficient. (<u>Id.</u> at 12-13.)

The Commissioner asserts that the ALJ determined that Claimant's bipolar disorder, social anxiety disorder, and borderline intellectual functioning were severe impairments, and therefore, Claimant has no reason to protest the ALJ's step two determination as it was in her favor. (Document No. 19 at 8-12.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. <u>Id.</u>; §§ 404.1521(b)(1)-(6);

416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The ALJ in the instant matter determined at step two of the sequential analysis that Claimant had the severe impairments of bipolar disorder, social anxiety disorder, and borderline intellectual functioning. (Tr. at 13.) Claimant argues that the ALJ was required to identify each and every significant sign, symptom, and limitation regarding her severe impairments at the second step of the sequential analysis. It does not appear that she is arguing that the ALJ failed to find other severe impairments. The undersigned finds that the particular signs, symptoms, and limitations of Claimant's severe impairments are, and were, as will be discussed below, properly analyzed in assessing Claimant's residual functional capacity ("RFC") and that the ALJ was not required to discuss each of these factors at step two of the sequential analysis. Claimant essentially has conceded that her mood swings, panic attacks, irritability, and other mental ailments are significant signs and symptoms of the severe impairments as assessed by the ALJ. Accordingly, the ALJ properly did not find them to be severe impairments. See Boling v. Astrue, ____ F.Supp.2d ____, 2008 WL 582976, *2 (S.D.W.Va. Feb. 29, 2008)(District Judge Faber)(finding that "[c]ombining similar impairments when making a severity determination, is, however, proper under the regulations, and has caused the plaintiff no prejudice. [20 C.F.R.] § 404.1520(c).").

To the extent that Claimant asserts that her physical conditions, including her back and

shoulder impairment and chronic obstructive pulmonary disease ("COPD"), as well as her history of alcohol abuse, are severe impairments, the undersigned finds Claimant's arguments to be without merit. Regarding her alleged back and shoulder pain, the ALJ properly noted that such complaints were reflected only on one occasion in the progress notes of Claimant's treating physician. (Tr. at 14, 228.) There is no indication that Claimant had any functional limitations resulting from such pain. Regarding Claimant's COPD, the ALJ noted Claimant's history of chronic smoking, but found that the condition was not severe because Claimant "did not allege this condition, nor report any limitations as a result, in the disability forms completed in connection with her application or at the hearing." (Tr. at 14.) The medical evidence demonstrates that Claimant was diagnosed with COPD only on one occasion by Dr. M. Khalid Hasan, M.D. (Tr. at 14, 254.) There neither is evidence supporting the diagnosis except for Claimant's chronic smoking, nor evidence of any functional limitations resulting from the COPD. Accordingly, the undersigned finds that the ALJ's decision that Claimant's COPD was a non-severe impairment is supported by substantial evidence.

Finally, the ALJ found that Claimant's history of alcohol abuse was a non-severe impairment because Claimant testified that she had not consumed alcohol in over one year and that she had completed a six month program and group counseling for the abuse. (Tr. at 14, 285-86.) Claimant having testified that alcoholism was no longer an active issue, the undersigned finds that the ALJ's finding that the history of alcohol abuse was a non-severe impairment is supported by substantial evidence. Accordingly, the undersigned finds that the ALJ's finding that Claimant's only severe impairments were bipolar disorder, social anxiety disorder, and borderline intellectual functioning is supported by substantial evidence of record.

2. Listing Impairments.

Claimant next alleges that the ALJ erred in finding that Claimant's impairments did not meet or medically equal Listings of Impairments 12.04 Affective Disorders, 12.05C Mental Retardation, and

12.06 Anxiety Disorders. (Document No. 16 at 13-19.)

A. 12.05C.

Claimant alleges that the ALJ improperly determined that her IQ scores were invalid, and therefore, that she met the qualifying criteria of 12.05C. (Document No. 16 at 14.) She argues that the IQ scores measured by Ms. Mann and Dr. Steward were valid and satisfy Listing 12.05C. (Id.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 19 at 12-14.)

"The Listing of Impairments . . . describes, for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2006); see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." See id. at 531 (emphasis in original).

Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2006). The required level of severity for Listing 12.05 is satisfied when any one of the four following requirements is satisfied:

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of Health & Human Serv., 890 F.2d 666 (4th Cir. 1989) (per curiam).  A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2006). In Luckey, the Court ruled that:

Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

Id. at 669 (internal citations omitted).

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home

living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work.").[3] Also, according to the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. <u>Id.</u> at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. <u>Id.</u> at 40. Thus, the Regulations make clear that Listing 12.05C is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; <u>see also</u> <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The record in this case disclosed that on July 1, 2003, L. Andrew Steward, Ph.D., a licensed psychologist, performed a psychological evaluation of Claimant. (Tr. at 13, 272-77.) Dr. Steward administered the WAIS-III, which yielded a verbal IQ of 71, a performance IQ of 74, and a full scale IQ of 70. (Tr. at 13, 275.) Dr. Steward noted that the full scale score fell at the high end of mild mental retardation. (<u>Id.</u>) However, Dr. Steward opined that due to Claimant's "hastiness and uninvolvement

---

[3] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning. Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51; severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." <u>The Merck Manual of Diagnosis and Therapy</u> 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

in the testing procedure it is felt that she might be able to function slightly higher at times given a better effort." (Tr. at 13, 276.)

Samantha Mann, M.A., a licensed psychologist, performed a further psychological evaluation of Claimant on May 25, 2005. (Tr. at 13, 163-70.) Ms. Mann performed intellectual testing by administering the WAIS-III on which Claimant obtained a verbal IQ score of 76, a performance IQ score of 69, and a full scale IQ score of 70. (Tr. at 13, 167.) On WRAT-3 testing, it was determined that Claimant read at the high school level, performed math at the second grade level, and spelled at the third grade level. (Id.) Ms. Mann noted that Claimant gave up rather easily on many of the performance related items, that her pace was slow, and that she reported vision problems because she was not wearing her glasses. (Id.) Based on Claimant's test results, Ms. Mann opined that the Verbal IQ score was "considered to be the best indicator of intellectual functioning", which was "within the middle to upper borderline range." (Id.) She further opined that "[r]esults from the WRAT3 are considered of questionable validity due to her giving up rather easily." (Tr. at 13, 168.)

Based on Dr. Steward's opinion that Claimant could function slightly higher and Ms. Mann's opinion that her verbal IQ was considered the best indicator of her intellectual functioning, the ALJ determined that the IQ "scores were not considered valid, as required by Section 12.05(C)." (Tr. at 14.) The ALJ's finding is supported by the opinions of Ms. Mann and Dr. Steward, and therefore, the undersigned finds that the ALJ's decision is supported by substantial evidence; Claimant did not meet Listing 12.05C because she did not have valid IQ scores of 70 or below. It is significant to note that both Ms. Mann and Dr. Steward, despite their intellectual functioning testing, diagnosed borderline intellectual functioning and not mental retardation. (Tr. at 13, 168, 276.)

Furthermore, as the Commissioner points out, Claimant has not demonstrated that she has significant limitations of adaptive functioning. (Document No. 19 at 13-14.) Ms. Mann's evaluation

13

revealed logical and coherent thought processes, fair insight, normal judgment, normal memory, and mildly deficient concentration. (Tr. at 13, 166.) Though Ms. Mann opined that Claimant's ability to maintain social functioning and persistence was severely deficient, there is no indication that such severity was established prior to the age of twenty-two. Furthermore, Claimant was able to obtain a driver's license, and reported that she could read, write and perform arithmetic, though had some difficulty with spelling, multiplying, and dividing. (Tr. at 13, 164, 282.) Claimant's school grades were average or slightly below average. (Tr. at 150, 164.) Furthermore, the evidence of record reveals that Claimant was capable of caring for her children, performed household chores, prepared simple meals, and cared for her personal needs. (Tr. at 19, 68-75, 169, 273, 276, 288-89.) Finally, Dr. Steward opined that Claimant had a GAF of 59, which was indicative of only moderate mental functional limitations.[4] Accordingly, the undersigned finds that Claimant has demonstrated neither deficits in adaptive functioning nor a valid IQ score of 70 or below. The ALJ's decision that Claimant neither met nor medically equaled Listing 12.05C therefore, is supported by substantial evidence.

B. <u>12.04 & 12.06</u>.

Section 12.04 of the Listing of Impairments, covers Affective Disorders, and provides as follows:

> *Affective Disorders.* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> * * *

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

B.  Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning: or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.04 (2006).

Section 12.06 covers Anxiety Related Disorders, and provides as follows:

*Anxiety Related Disorders.* In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

Section 12.06 contains the same B criteria. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.06 (2006).

In the instant case, the parties agree that the ALJ evaluated Claimant's bipolar disorder and social anxiety disorder under 12.04 and 12.06 and determined that Claimant failed to meet either the functional requirements of the "B" criteria, or the requirements of the "C" criteria, and therefore, failed to meet the Listings. Claimant does not dispute that the ALJ properly found that her impairments did not meet the requirements of the "C" criteria. Because the undersigned finds the "B" criteria dispositive, the undersigned does not address the clinical requirements of the "A" criteria.

The ALJ found as follows with regard to the "B" criteria:

In regard to "Part B" criteria the claimant had mild restriction of activities of daily living. The claimant reported to Ms. Mann that she straightens her house to include loading the dishwasher and folding clothes if needed, cooks on some days, showers every other day, and helps bathe her son. The claimant has moderate difficulty in maintaining social functioning. She reported that she does not go out much but may visit relatives once a week. She indicated that her husband does the shopping and pays the bills. The claimant has moderate difficulties in maintaining concentration, persistence, or pace. The claimant reported that she watches television to include the news. She reported trouble remembering, completing tasks, concentrating, understanding, and following instructions. There is no evidence that the claimant has experienced an episode of decompensation since her date of filing.

15

(Tr. at 14.) Though Ms. Mann opined that Claimant had severe deficiencies in maintaining social functioning and persistence, the ALJ accorded greater weight to the opinions of Drs. Lilly and Saar who opined that she had only moderate difficulties in maintaining social functioning and persistence. (Tr. at 15.)

_Activities of Daily Living_.

The ALJ determined that Claimant had only mild limitations in activities of daily living. (Tr. at 14.) Activities of daily living include adaptive activities like cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using phones and directories and using a post office. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1) (2006). "Marked" limitation in this area is defined by the nature and overall degree of interference with function. Id. It is necessary to determine the extent to which the individual is capable of initiating and participating in activities independent of supervision or direction. Id.

The ALJ noted that Claimant loaded the dishwasher, folded clothes, cooked on some days, showered every other day, and helped bathe her son. (Tr. at 14.) Claimant testified that she watched television, that her husband and daughter helped with housework, and that her husband did the shopping and paying of the bills. (Tr. at 288.) On a form Function Report - Adult, dated April 20, 2005, Claimant reported that she cared for her children, maintained her personal care without problems, prepared simple meals, performed household chores with her husband, and watched television. (Tr. at 68-75.) Claimant reported to Ms. Mann that she made coffee, watched television, went to the bus stop with her son, straightened the house, loaded the dishwasher, folded clothes if necessary, cooked on some days, showered every other day, and helped bathe her son. (Tr. at 169.)

The ALJ's finding of mild limitations is consistent with the October 10, 2005, opinion of the non-examining state agency medical consultant, Timothy Saar, Ph.D., and is slightly more restrictive

16

than the June 4, 2005, opinion of Dr. Debra L. Lilly, Ph.D., who opined that Claimant had no limitations of activities of daily living. (Tr. at 14-15, 197, 220.) Claimant argues that Dr. Lilly and Dr. Saar's opinions lacked reference to how they arrived at their determinations, did not refer to Claimant's medications, and failed to consider her treating physician's most recent reports. (Document No. 16 at 16.) Contrary to Claimant's allegations, Dr. Lilly's and Dr. Saar's opinions reference the medical opinions considered in determining Claimant's mental residual functional capacity. (Tr. at 199, 222.) They each found Claimant credible regarding her concentration and memory problems, as well as her activities of daily living. (Id.) Dr. Iyer noted on March 8, 2006, Claimant's reports that she was unable to do "day-to-day outdoor activities" and that her husband helped her with chores. (Tr. at 225.) Dr. Iyer opined on March 18, 2005, that Claimant's GAF was 50 and that on September 7, 2005, her GAF ranged from 40 to 50. (Tr. at 19, 173, 226.) However, by August 3, 2006, and November 1, 2006, Claimant's depression, mood swings, and insomnia had improved with medication, though she continued to experience chronic anxiety and anxiety attacks. (Tr. at 227-30.) Mental status examinations however, essentially were normal, with only a mildly dysphoric mood and anxious affect, good insight and judgment, logical and goal directed thought process, and normal speech rate, tone, and volume. (Tr. at 19, 227, 230.) As the ALJ found, Dr. Iyer's impressions do not support the severity of limitations as alleged by Claimant. (Tr. at 19.) Accordingly, the ALJ was entitled to rely on the opinions of the state agency consultants, which was consistent with the evidence of record. See 20 C.F.R. §§ 404.1527(f)(2); 417.927(f)(2) (2006); Smith v. Schweiker, 795 F.2d 343, 356 (4th Cir. 1986) (stating that "the testimony of a non-examining physician can be relied upon when it is consistent with the record" and that "if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand."). It appears therefore, that the ALJ's determination of mild limitation in the area of activities

of daily living is proper and supported by substantial evidence.

   *Social Functioning*.

   The ALJ determined that Claimant had only moderate difficulties in maintaining social functioning. (Tr. at 14.) He noted that Claimant did not go outside the house much and that her husband paid the bills and shopped, but that Claimant visited relatives once a week. (Tr. at 14.) Social functioning refers to one's capacity to interact independently, appropriately, effectively and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2) (2006). It includes the ability to get along with family members, friends, neighbors, grocery clerks, landlords, or bus drivers. Id.

   Claimant argues that her ability to maintain social functioning was markedly limited. (Document No. 16 at 17-18.) However, Claimant reported to Dr. Steward that children, noise, and crowds did not bother her; that she spent time caring for her children; that she visited family and friends a lot; that she received a lot of visitors, especially from family and friends; and that she drove a good bit. (Tr. at 273.) Claimant later reported that she rarely went out of her house, but visited with her mother on a daily basis. (Tr. at 72, 225-26.) Ms. Mann opined that Claimant's ability to maintain social functioning was severely deficient but Drs. Lilly and Saar opined that her ability was only moderately deficient. (Tr. at 14-15, 169, 197, 220.) The opinions of Drs. Lilly and Saar are supported by the evidence of record, and therefore, the ALJ's determination of moderate limitation in the area of social functioning is proper and supported by substantial evidence.

   *Concentration, Persistence, or Pace*.

   The ALJ determined that Claimant had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 14.) Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion

18

of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3) (2006). Claimant again points to the findings on the psychological evaluation completed by Ms. Mann; however, as previously noted, these findings were not given significant weight by the ALJ because they were inconsistent with the evidence. (Tr. at 51, 18.) Rather, the ALJ accorded great weight to the opinion of Dr. Lilly and significant weight to the opinion of Dr. Saar. (Tr. at 20.) Indeed, Ms. Mann noted during Claimant's evaluation that her concentration was only mildly deficient, her pace was moderately deficient, and her persistence was severely deficient as she required a good deal of encouragement during the interview. (Tr. at 167, 169.) The ALJ noted Claimant's reports that she watched television, including the news. (Tr. at 14.) He further noted that Claimant reported trouble remembering, completing tasks, concentrating, understanding, and following instructions. (Id.) Dr. Lilly considered Claimant credible regarding her concentration and memory problems, and noted that she did not "expend adequate effort across testing interviews." (Tr. at 15, 20, 199.) Nevertheless, Dr. Lilly opined that Claimant's ability to maintain concentration, persistence, or pace was only moderately deficient. (Tr. at 14-15, 20, 197.) Likewise, Dr. Saar opined that Claimant's ability to maintain concentration, persistence, or pace was only moderately deficient. (Tr. at 14-15, 20, 220.) The opinions of Drs. Lilly and Dr. Saar are supported by the substantial evidence of record, and therefore, the ALJ was entitled to rely on their opinions. Accordingly, the ALJ's determination of moderate limitations of concentration, persistence, or pace is supported by substantial evidence.

The ALJ also found that Claimant had not experienced any episodes of decompensation. (Tr. at 14.) Claimant makes no argument on this particular point and points to no evidence which would support a different conclusion. The Court agrees with the Commissioner that the record is devoid of evidence of repeated episodes of decompensation. Accordingly, the Court need not address this element, and notes that it cannot be shown that Claimant's bipolar disorder or anxiety disorder met two

19

of the four elements of the "B" criteria for Listings 12.04 and 12.06. Claimant does not dispute that the ALJ properly found that her conditions did not meet the "C" criteria of Listings 12.04 and 12.06. Having determined that the ALJ properly found that Claimant's impairments did not rise to the necessary level on three out of four elements of the "B" criteria, the Court need not address the "A" criteria.  It is noted that no state agency physician found that Claimant had an impairment that met or equaled any of the Listings. Accordingly, the undersigned finds that the ALJ's step three analysis is supported by substantial evidence.

3. **RFC Assessment**.

Third, Claimant alleges that the ALJ erred in assessing Claimant's RFC and that the ALJ's determination was not supported by substantial evidence. (Document No. 16 at 19-23.) Particularly, Claimant asserts that the ALJ erred in giving no significant weight to the opinions of Dr. Iyer, Dr. Steward, and Ms. Mann. (Id. at 20.) She further asserts that the ALJ erred in adopting the findings of Dr. Saar as his opinions are inconsistent with the opinions of examining consultants Dr. Steward and Ms. Mann. (Id. at 21.) Claimant argues that contrary to the ALJ's finding, there is no evidence that Claimant gave up easily or intentionally slowed her pace, but that it was a product of deficient intellect. (Id.)

The Commissioner asserts that the objective evidence reveals that despite Claimant's mental impairments, she retained normal functions and could read and write. (Document No. 19 at 17.) The Commissioner asserts that Dr. Iyer noted her conditions improved with treatment, and that the ALJ's RFC assessment properly is supported by the opinions of Drs. Lilly and Saar. (Id.) Finally, the Commissioner asserts that Claimant demonstrated that she could perform routine, repetitive tasks involving only incidental contact with the public, as reflected in her past factory work which ended not because of her impairments. (Id.)

20

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 13-20.) After consideration of all the evidence, the ALJ determined that Claimant retained the RFC to perform the exertional demands of work at any level, limited to routine, repetitive tasks involving incidental public contact. (Tr. at 15.) The ALJ further determined that Claimant must avoid exposure to hazards such as unprotected heights and dangerous equipment. (<u>Id.</u>) Claimant argues that the ALJ's determination was not based upon the substantial evidence, but Claimant fails to

acknowledge that much of the evidence supports the ALJ's determination.

On March 8, 2006, Dr. Iyer opined that Claimant was unable to work. (Tr. at 19, 225.) He had previously opined on March 18, 2005, that Claimant's GAF was 50, and on September 7, 2005, that it ranged from 40 to 50. (Tr. at 19, 172, 226.) Dr. Iyer's opinions, however, are not supported by his own treatment notes or the other evidence of record. Particularly, as discussed above, Dr. Iyer's mental status examinations essentially were normal and Claimant reported that medications improved her conditions. As the ALJ noted, his opinions appeared to be based primarily on Claimant's subjective reports and not on the basis of his examinations. (Tr. at 19.) Accordingly, the ALJ properly did not accord controlling weight to Dr. Iyer's opinions.

As discussed above, the ALJ also properly accorded great weight to the opinion of Dr. Lilly and significant weight to the opinion of Dr. Saar. Dr. Lilly opined that Claimant's ability to maintain activities of daily living was not limited and that she had moderate limitations in maintaining social functioning and concentration, persistence, or pace. (Tr. at 15, 20, 297-98.) Dr. Lilly noted that the "preponderance of the evidence reflects that she does not expend adequate effort across testing interviews." (Tr. at 199.) Nevertheless, Dr. Lilly opined that Claimant retained "the ability to learn and perform simple, unskilled work-like activities that require limited demands and interaction with the general public." (Tr. at 203.) Likewise, Dr. Saar opined that Claimant had mild limitations of activities of daily living and moderate limitations of social functioning, concentration, persistence, or pace. (Tr. at 15, 20, 220-21.) The assessments of Drs. Lilly and Saar are supported by Dr. Iyer's mental status exams, as well as the other medical evidence of record, including Claimant's testimony and self-reports. Though Ms. Mann opined that Claimant had severe limitations with social functioning and pace, as discussed above, the substantial evidence of record demonstrated that she did not. It is significant to note that Ms. Mann, as did Dr. Lilly, noted that Claimant "gave up" rather easily on

22

many of the performance related items of the WAIS-III testing. (Tr. at 167.) Accordingly, the undersigned finds that the ALJ properly assessed the various opinions of record in analyzing Claimant's RFC.

In light of all the evidence of record, including the opinions of Drs. Lilly, Saar, and Iyer, as well as Ms. Mann and Dr. Steward, the ALJ's determination that Claimant was capable of performing work that allowed for reading at the high school level, spelling at the third grade level, and performing math at the second grade level, and that involved routine, repetitive tasks involving incidental public contact, is supported by substantial evidence.

4. **Hypothetical Question**.

Finally, Claimant challenges the ALJ's step five finding of non-disability in that the ALJ failed to include all of her mental and physical impairments in the hypothetical questions posed to the vocational expert. (Document No. 16 at 23-25.) The Commissioner asserts that the Claimant's argument is without merit and that the ALJ's step five decision is supported by substantial evidence. (Document No. 19 at 19-20.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ

23

finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 294-96.) The ALJ first asked whether a person of Claimant's age, education, past relevant work experience, and residual functional capacity, who was limited to performing light exertional level work consisting of routine, repetitive tasks with only incidental public contact and no exposure to hazards, could perform any work. (Tr. at 294-95.) In response to the ALJ's hypothetical, the VE responded that such person could perform light, unskilled jobs such as an assembler, a kitchen worker, and a laundry worker. (Tr. at 295.) The ALJ then asked whether any of the jobs identified would be altered if the hypothetical person lacked the capacity to sustain attention and concentration for the successful performance of routine, repetitive tasks. (Tr. at 295.) The VE responded that such a limitation would preclude all work activity. (Id.) Claimant's counsel then expanded the ALJ's first hypothetical question and asked whether any of the jobs identified would be altered if the hypothetical person decompensated and cried when exposed to minimal stressful conditions. (Tr. at 296.) The VE responded that such a limitation would preclude all work activity. (Id.)

The ALJ's RFC findings accommodates the first hypothetical question and the ALJ specifically found that the medical evidence did not support Claimant's inability to perform routine, repetitive tasks, or demonstrate any episodes of decompensation. Accordingly, the undersigned finds that the hypothetical questions were proper, included those mental limitations supported by the record, and that the ALJ's decision is supported by substantial evidence.

Contrary to Claimant's assertion, as discussed above, there is no evidence demonstrating that Claimant had any physical limitations resulting from her shoulder and back pain or COPD. To the extent that she had any limitations resulting from these physical impairments, the ALJ accommodated them by identifying jobs that required only light exertional activity. Accordingly, the undersigned finds

24

that substantial evidence supports the ALJ's step five decision.

## PROPOSAL AND RECOMMENDATION

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (Document No. 16.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 19.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 27, 2008.

R. Clarke VanDervort
United States Magistrate Judge

25