IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LINDA LYNN COOK,

                Plaintiff,

v.                                   CIVIL  ACTION  NO.  5:07-0571

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

MEMORANDUM OPINION AND ORDER

This action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  The Magistrate Judge has submitted findings of fact and recommended that Plaintiff's Motion for Judgment on the Pleadings (doc. 15) be denied, that the Commissioner's Motion for Judgment on the Pleadings (doc. 19) be granted, and that the decision of the Commissioner be affirmed and the action dismissed from the Court's docket.

I.
STANDARD OF REVIEW

This Court must "make a *de novo* determination of those portions of the . . . [Magistrate Judge's] proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  The scope of this Court's review of the Commissioner's decision, however, is narrow:  This Court must uphold the Commissioner's factual findings "if they are supported by

substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 42 U.S.C. § 405(g) (providing "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (other citation omitted)).  Substantial evidence is "'more than a mere scintilla'" of evidence, but only such evidence "'as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Craig*, 76 F.3d at 589; *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"  (citation omitted)).

In conducting this review, this Court must also address whether the Administrative Law Judge (ALJ) analyzed all of the relevant evidence and sufficiently explained his rationale in crediting or discrediting certain evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998); *see, e.g.*, *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding claim for disability benefits because ALJ did not adequately explain why he credited one doctor's views over those of another); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (ALJ must "explicitly indicate[] the weight given to all of the relevant evidence"); *see also* 20 C.F.R. § 404.1527(b)-(d). Thus, while an ALJ is entitled to give less weight to an opinion or any portion of the evidence that is not supported by or is inconsistent with the other evidence in the record, such a finding must appear explicitly in the decision. *See* 20 C.F.R. §§ 404.1527(d)(3), (4) and 416.927(d)(3), (4).

It is the duty of the ALJ, however, not the courts, to make findings of fact and credibility determinations and to resolve conflicts in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  If, in the face of conflicting evidence, reasonable minds could differ as to whether

a claimant is disabled, it is the Commissioner or his designate, the ALJ, who makes the decision. *Craig*, 76 F.3d at 589 (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  "The issue before [this Court], therefore, is not whether [Plaintiff] is disabled, but whether the A.L.J.'s finding that . . . [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig*, 76 F.3d at 589 (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)).  Thus, it is necessary for this Court to review the evidence in this case to determine whether substantial evidence exists to support the ALJ's conclusion that Plaintiff is not disabled and whether the ALJ properly applied the law.

Applying these standards, the Court has reviewed *de novo* those portions of the Proposed Findings and Recommendation to which Plaintiff objected.  For the reasons set forth below, the Court **ADOPTS** the Proposed Findings and Recommendation of the Magistrate Judge, **DENIES** Plaintiff's Motion for Judgment on the Pleadings, **GRANTS** the Commissioner's Motion for Judgment on the Pleadings,  **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action from the Court's docket.

## II.
## DISCUSSION

Plaintiff makes five objections to the Magistrate Judge's Proposed Findings and Recommendation.  The Court discusses each in the order presented by Plaintiff.

**A. Identification of Plaintiff's Severe Impairments**

Disability claims are evaluated using a process that includes up to five steps. 20 C.F.R. §
416.920(a)(4). If at any step an ultimate determination as to disability is made, the process is
concluded. *Id.* First, inquiry is made as to whether the claimant is currently performing gainful
activity. *Id.* Next, a determination is made as to whether the claimant has an impairment(s) that is
(are) severe and meet(s) the duration requirement. *Id.* In her Objections, Plaintiff complains that
the Magistrate Judge improperly upheld the ALJ's second-step determination that her severe
impairments included only bipolar disorder, social anxiety disorder, and borderline intellectual
functioning. Plaintiff contends that the ALJ should have concluded that her severe impairments also
include her "mood swings, panic attacks, irritability, . . . . anxiety, lack of insight and
judgment, . . . . crying episodes, suicidal ideation, suicide attempts, combativeness, . . . . inability
to get out of her home, her low self-esteem, low energy level, lack of interest in activities, erratic
sleep and her medication usage." *Plaintiff's Objections,* at p. 2-3. According to Plaintiff, "these
conditions, if not acknowledged at step two of the sequential evaluation process, are then excluded
from discussion at the remaining steps in the sequential evaluation process." *Id.* at p. 2. In
particular, Plaintiff asserts that the ALJ's refusal to identify these conditions at the step-two stage
precluded him from later considering their effect on Plaintiff's ability to perform daily activities,
including basic work activities.

The Court agrees with the Magistrate Judge that the maladies alleged by Plaintiff were
considered by the ALJ when, between steps three and four, he assessed Plaintiff's "residual
functional capacity." *Proposed Findings and Recommendation,* at p. 8; *see* 20 C.F.R. §
416.920(a)(4). Plaintiff's lengthy list of alleged afflictions are but symptoms of the severe

-4-

impairments identified by the ALJ.  There is no requirement that the ALJ label every problem arising from Plaintiff's severe impairments a severe impairment in its own right.  *See Boling v. Astrue,* 2008 U.S. Dist. LEXIS 15781, at *6 (S.D. W.Va. Feb. 29, 2008) ("Combining similar impairments when making a severity determination is . . . proper under the regulations, and has caused the plaintiff no prejudice.") Moreover, Plaintiff has pointed to no evidence that any one of these conditions, considered alone, rises to the level of a severe impairment.  The Court finds that the ALJ's determination that Plaintiff suffers from only the three severe impairments noted above was proper.

**B. Listing 12.05C**

The Listings of Impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  Listing 12.05C provides that one way in which a person may be found to be mentally retarded resulting in a severe impairment is by having a "full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation or function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  In her Objections, Plaintiff complains that the Magistrate Judge wrongfully upheld the ALJ's decision to declare the results of her IQ tests invalid.

Two licensed psychologists have administered IQ tests to Plaintiff.  In the first test, she achieved a verbal IQ of 71, a performance IQ of 74, and a full scale IQ of 70.  *Transcript of ALJ Proceedings,* at p. 275.  This full scale score was the highest score that one could obtain and still potentially fall under the purview of Listing 12.05C.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The administering psychologist stated in his evalution that "[d]ue to [Plaintiff's] hastiness and uninvolvement in the testing procedure it is felt that she might be able to function slightly higher at times given a better effort. *Transcript of ALJ Proceedings,* at p. 276.

In Plaintiff's second test, Plaintiff achieved a verbal IQ of 76, a performance IQ of 69, and a full scale IQ of 70. *Id.* at p. 167. Again, This full scale score was the highest score that one could obtain and still potentially fall under the purview of Listing 12.05C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The administering psychologist stated in her evaluation that Plaintiff's "[p]ace was rather slow" and that Plaintiff "reported vision problems in that she was not wearing her glasses." *Transcript of ALJ Proceedings,* at p. 167. The psychologist believed that these factors had "a significant negative effect on many of the performance related items." *Id.* She also noted that Plaintiff "gave up rather easily on many of the performance related items," and that Plaintiff's verbal IQ score of 76, rather than her full scale IQ score of 70, was "considered to be the best indicator of intellectual functioning." *Id.*

In light of the circumstances surrounding these IQ tests, and the statements of the administering psychologists, the Court believes that the ALJ acted on the basis of substantial evidence when he considered the results of Plaintiff's IQ tests to be invalid.

In her Objections, Plaintiff states that "the only question remaining" under Listing 12.05C is her IQ level because the ALJ "in effect acknowledges that [her three severe] impairments have a significant effect upon [her] abililty to perform basic work activities." *Plaintiff's Objections,* at p. 4-5. However, the Court fails to understand how Plaintiff comes to this conclusion. To the contrary, there is substantial evidence that Plaintiff has not demonstrated that she has "a physical or other mental impairment imposing an additional and significant work-related limitation or

function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Thus even if Plaintiff had been found to have a full scale IQ of 70, she would not meet the second requirement of Listing 12.05C.

This substantial evidence consists of a variety of facts. Although a mental status examination of Plaintiff revealed some limitations, it also showed alertness and proper orientation; logical and coherent thought processes; fair insight; normal judgment and memory; and an apparent lack of delusions, obsessive thoughts, compulsive behaviors, unusual perceptual experiences and suicidal and homicidal ideation. *Transcript of ALJ Proceedings,* at p. 166. Plaintiff can read, write, and perform arithmetic, albeit the latter two with some difficulty, and she has been able to obtain a driver's license. *Id.* at p. 164, 283. In fact, she previously told a psychologist that she drove "a good bit," "visit[ing] family a lot." *Id.* at 17. They also visit her, as do "lots . . . of friends." *Id.* She states that she takes care of her children and her disabled husband, prepares food, cleans her house and runs errands. *Id.* at p. 17, 68-69. In light of these considerations, the Court finds substantial evidence for the finding that Plaintiff does not have a significant work-related limitation. The finding that she does not meet the requirements of Listing 12.05C was appropriate.

### C. Listings 12.04 and 12.06

Listings 12.04 and 12.06 govern how one may be determined to have a severe impairment arising from an "Affective Disorder[]" or an "Anxiety Related Disorder[,]" respectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Both Listings provide that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." *Id.* Plaintiff does not dispute the ALJ's finding that she does not meet the requirements of "C". *See Plaintiff's Objections,* at p. 6-7. However, she contends that the

ALJ erred because he did not address the requirements of "A." *Id.* She makes this claim despite the fact that the ALJ found that she did not meet the requirements of "B."

The "B" requirements are the same for both Listings 12.04 and 12.06. Under "B," the disorder at issue must be sufficiently severe as to "[r]esult[] in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B, 12.06B. According to Plaintiff:

> There is no authority in the Regulations permitting the adjudicator or, in this instance, both the ALJ and U.S. Magistrate, to bypass discussion of the "A" criteria in Listings 12.04 and 12.06 because they 'believe' that determination of the "B" criteria is dispositive. By bypassing discussion of the claimant's "A" criteria in these Listings, the ALJ and U.S. Magistrate not only concede that the claimant meets such criteria but wrongly attempt to avoid discussion of the same, as required by the regulations, in order to limit consideration of the evidence required to be considered on this issue and to justify their erroneous conclusions with regard to the rating of the "B" criteria in this case.

*Plaintiff's Objections,* at p. 7.

Plaintiff's mischaracterizations, misstatements, and accusations are not convincing. Contrary to Plaintiff's assertions, there is in fact authority in the Regulations to support the ALJ's and Magistrate Judge's actions, and it could hardly be clearer. Both Listings 12.04 and 12.06 provide that "[t]he required level of severity for these disorders is met when the requirements in ***both*** A ***and*** B are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (emphasis added). The ALJ and Magistrate Judge do not, as Plaintiff states, "'*believe*' that determination of the 'B' criteria is dispositive," a finding that a claimant does not meet the "B" criteria *is* dispositive (as would be a

determination that a claimant does not meet the "A" criteria). *Plaintiff's Objections,* at p. 6 (emphasis added).   Yet Plaintiff would have the courts engage in the unnecessary exercise of evaluating the "A" criteria, too.   The ALJ and Magistrate Judge did not "wrongly attempt to avoid discussion of the ["A" criteria.]" *Id.* at p. 7.   They did not discuss the "A" criteria because it was pointless to do so in light of the fact that the "B" criteria had not been met.   Such a discussion is not "required by the regulations," as Plaintiff claims.   *Id.*   Plaintiff's assertion to the contrary is wholly without merit.

Plaintiff also claims that the ALJ lacked substantial evidence to find that her impairments were not sufficiently severe to result in three of the four requirements under "B."   The Court now considers each of the three requirements at issue.

### 1. Activities of Daily Living

"Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(1).   To satisfy the requirements of "B," these activities must be "[m]arked[ly] restrict[ed]" by the disorder. *Id.* at §§ 12.04B(1), 12.06B(1).   "Marked restriction" is evaluated "by the nature and overall degree of interference and function." *Id.* at §§ 1200C(1), 12.04B(1), 12.06B(1).   Considerations include the need for direct supervision, suitability of performance, and ability to perform on a routine basis and without undue distractions. *Id.* at § 1200C(1).

Plaintiff contends that the ALJ's finding that Plaintiff suffered from only mild restrictions on her activities is not supported by substantial evidence. The Court, however, disagrees. Plaintiff engages in a variety of the activities noted above without supervision and apparently in a suitable and routine manner. Although her husband does the shopping and pays the bills, she makes her bed, loads her dishwasher, folds clothes as needed, cooks on some days or "usually cook[s]", showers every other day, helps to bathe her son, goes to the school bus stop with him, attends monthly appointments, and watches some news. *Transcript of ALJ Proceedings,* at p. 14, 169, 288.

Moreover, two state agency physicians who reviewed Plaintiff's medical record found that she had no or only mild restriction of daily activities. *Id.* at p. 14, 15, 197, 220. In her Objections, Plaintiff ignores this substantial evidence and instead points to the reports of her treating psychiatrist. In his March 8, 2006 report, he stated that "[Plaintiff] reports having prominent symptoms of Social Anxiety Disorder and mood swings," such as an inability to leave her home or maintain employment. *Id.* at p. 225. However, the psychiatrist increased the dosage of her medication, and by August 3, 2006, Plaintiff's depression, mood, mood swings and insomnia had all improved. *Id.* at p. 227. Although Plaintiff still appeared "very anxious," her speech was "normal in rate, tone and volume," her "[t]hought process [was] logical and goal directed [sic]," her "insight and judgment [were] good," and she had no delusions, auditory or visual hallucinations, or suicidal or homicidal ideation or plan. *Id.* The psychiatrist did not note if Plaintiff reported being able to leave her home, but the Court does observe that some of the activities discussed earlier in this Opinion, such as visiting family and walking to the school bus stop, would require Plaintiff to leave her home.

-10-

Plaintiff argues "that the record contains substantial evidence of 'marked' limitation in her activities of daily living improperly ignored by the ALJ and U.S. Magistrate," such as her treating psychiatrist's report. *Plaintiff's Objections,* at p. 8. Plaintiff misapplies the applicable standard in this way throughout her Objections. To reiterate, "[t]he issue before [this Court] . . . , is not whether [Plaintiff] is disabled, but whether the A.L.J.'s finding that . . . [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig*, 76 F.3d at 589. Where there is conflicting evidence, the ALJ must resolve it. *Id.* The Court does not "make findings of fact and credibility determinations." *Hays,* 907 F.2d at 1456. The fact that there may be evidence tending to contradict the ALJ's conclusion that Plaintiff is not disabled does nothing to refute the fact that there is substantial evidence supporting his conclusion. Even assuming that the reports of Plaintiff's treating psychiatrist constitute such contradictory evidence, the ALJ was under no obligation to credit them above the substantial evidence supporting his conclusion that Plaintiff is not disabled. *See Smith v. Schweiker,* 795 F.2d 343, 346 (4th Cir. 1986) ("[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand.")

Plaintiff goes on to reargue her mental limitations and claims that she continues to suffer from panic attacks. She also points to a 2005 psychologist's report in which the examining psychologist diagnosed major depressive disorder and observed psychomotor retardation. *Transcript of ALJ Proceedings,* at p. 168. The diagnosis was based on Plaintiff's "diminished interest in activities, withdrawal, sleep difficulty, weight gain, appetite increase, low self-esteem,

periods of crying, past suicidal thoughts and two past suicide attempts." *Id.* However, the issue at hand is whether Plaintiff suffers marked restriction of her activities of daily living, and Plaintiff fails to indicate whether, and how, these conditions presently restrict her daily activities. More importantly, she fails to indicate how they show that the ALJ lacked substantial evidence on which to base his decision. Plaintiff has reported engaging in various activities of daily living routinely and without supervision. Two non-treating physicians reviewed Plaintiff's record and found no or only mild restriction of her daily activities. Medication seems to have improved Plaintiff's functioning. This evidence is substantial. The ALJ's finding that Plaintiff does not suffer marked restriction of her daily activities should stand.

### 2. Social Functioning

The ALJ also found that Plaintiff did not have "[m]arked difficulties in maintaining social functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04B(2), 12.06B(2). "Social functioning refers to [one's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *Id.* at § 12.00C(2). Marked difficulties in social functioning may include "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Id.* "Strength in social functioning" may include the "ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities." *Id.*

Evidence of Plaintiff's social functioning appears to be mixed. Plaintiff self-reported that visiting the doctor or being amongst strangers makes her uncomfortable and aggravated, apparently because she feels like people are looking at her or making fun of her. *Id.* at p. 69, 71. Indeed, one

evaluating psychologist found Plaintiff's social functioning to be "severely deficient," and her treating psychiatrist previously noted that Plaintiff was unable to leave her home. *Id.* at p. 169, 225. However, Plaintiff's functioning apparently has improved since then, and there is no indication that she remains homebound. *Id.* at p. 227. In fact, there is considerable question as to whether Plaintiff was ever homebound, as she claims, because she also has reported that she "visits friends and family a lot" and "drives a good bit." *Id.* at p. 273. She also hosts "lots of visitors including family and friends," and apparently interacts positively with her husband and two of her children. *Id.* at p. 69-70, 273. Furthermore, Plaintiff has reported that while "[s]ome things will make her anxious, . . . . [c]hildren, noise, and crowds do not bother her." *Id.* at p. 273. Finally, both of the physicians who reviewed Plaintiff's records found that she had only "moderate difficulties in maintaining social functioning." *Id.* at p. 14-15.

The Court believes that the ALJ relied upon substantial evidence when he determined that Plaintiff did not have *marked* difficulties in social functioning. *See id.* at p. 14 (finding "moderate" difficulties). As discussed in the previous subsection, there is no requirement that all of the evidence support the ALJ's finding. The ALJ considered, but rejected, Plaintiff's evidence. It is sufficient that substantial evidence supported his conclusion, even if there may have been evidence to the contrary. The Court will not second-guess an ALJ's findings, as long as they were based upon substantial evidence and he or she correctly applied the law. *Craig*, 76 F.3d at 589. This standard has been met, and the Court will not disturb the finding that Plaintiff does not have marked difficulties social functioning.

### 3. Concentration, Persistence, or Pace

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00C(3).  The ALJ found that Plaintiff had only moderate, as opposed to marked, difficulties in this area.  *Transcript of ALJ Proceedings,* at p. 14.  Both reviewing physicians concluded that Plaintiff had only moderate difficulties.  *Id.* at p. 14-15.  An evaluating psychologist found Plaintiff's persistence to be "[s]everely deficient as she required a good deal of encouragement during the interview [and testing]," but she also determined that Plaintiff's pace was only "moderately deficient" and her concentration merely "mildly deficient."  *Id.* at p. 169.  Plaintiff also reported "watch[ing] television to include the news" and performing a variety of household chores.  *Id.* at p. 14.

Plaintiff purports to argue that this evidence is not substantial, but what she really claims is merely that it is contradicted.  Plaintiff points to the results of intelligence and psychological tests that suggest that she has limited mental abilities and thus, in her view, limited  concentration, persistence, and pace.  She also restates that one psychologist who evaluated her found her psychomotor behavior to be characterized by psychomotor retardation.  *Id.* at 168.  She further notes that a second evaluating psychologist determined that she functioned "at the high end of the Mild Mental Retardation range" and that she "was below average in all areas of intellectual abilities measured," although Plaintiff omits the fact that this same psychologist also concluded that  "due to [Plaintiff's] hastiness and lack of sustained effort [in completing testing] it is felt that she might be able to function slightly higher at times."  *Id.* at p. 275-76.  At most, Plaintiff's cited evidence contradicts the evidence upon which the ALJ relied, but, as stated, there is no requirement that the evidence all point in the same direction.  Notwithstanding Plaintiff's evidence, the Court is

comfortable that the ALJ relied on substantial evidence in concluding that Plaintiff did not have marked difficulties in concentration, persistence or pace.

## D. Residual Functional Capacity Assessment

As discussed above, disability claims are evaluated using a process that includes up to five steps.  20 C.F.R. § 416.920(a)(4).  At the fourth step, "residual functional capacity [(RFC)]" is considered.  *Id.* at § 416.920(a)(4)(iv).  "RFC does not represent the least an individual can do despite his or her limitations, but the most."  Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474 34475-76 (1996).  "[T]he final responsibility for determining a claimant's RFC is reserved to the Commissioner." *Moss v. Astrue,* No. 5:07-00454, 2008 U.S. Dist. LEXIS 71506, at *17 (S.D. W.Va. Sept. 19, 2008) (citing 20 C.F.R. § 404.1527(e)(2)).

> In determining what a claimant can do despite his limitations, the SSA [Social Security Administration] must consider the entire record, including all relevant medical and nonmedical evidence, such as claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

*Id.* at *16.  "In determining disability, the ALJ must consider the medical source opinions 'together with the rest of the relevant evidence . . . receive[d].'"  *Id.* at *17 (quoting 20 C.F.R. § 404.1527(b)).

In this case, the ALJ determined that Plaintiff "has the [RFC] to perform the exertional demands of work at any level," provided that she be "limited to performing routine, repetitive tasks involving incidental public contact."  *Transcript of ALJ Proceedings,* at p. 15.  The ALJ further found that Plaintiff "must avoid exposure to hazards such as unprotected heights and dangerous equipment."  *Id.*  Plaintiff argues that, in coming to this conclusion, the ALJ failed to consider an

array of evidence.  She states that the ALJ essentially ignored her "valid IQ scores of 70 or below;" her panic attacks, erratic sleep, and feelings of hopelessness and helplessness, as well as her treating psychiatrist's statement that these condition are symptoms of a social anxiety disorder; her limited insight and judgment, as reported by her treating psychiatrist; her psychological testing "indicating serious limitations in [her] thought process and ability to perform even basic daily activities;" her need for anxiety and pain medication; her "below average intellectual abilities;" her need for various inpatient counseling and the fact that, even with it, her prognosis would be "quite guarded," according to an evaluating psychologist; her psychomotor retardation and major depressive disorder, as diagnosed by another psychologist; and the effect of her motivation, pace, and vision problems on her testing.  *Plaintiff's Objections*, at p. 14-15.  According to Plaintiff, rather than consider this evidence, "the ALJ adopted, almost exclusively, the findings of non-examining psychologists . . . , whose opinions only reflect a limited review of the claimant's medical status."  *Id.* at p. 16.

The ALJ stated that, prior to making his findings, he undertook "careful consideration of the entire record," and from what the Court can see, he appears to be correct.  *Id.* at p. 13.  Indeed, it appears that the ALJ did in fact consider the evidence to which Plaintiff points.  *See id.* at p. 13-20. Plaintiff mistakes a refusal to credit this evidence with a failure to consider it.  Consider, as an example, Plaintiff's claim that the ALJ failed to "fully discuss" her various self-reported psychological problems leading her treating psychiatrist to diagnose a social anxiety disorder. *Plaintiff's Objections*, at p. 14.  On this point, the ALJ observed:

> [The treating psychiatrist] apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of

the claimant's subjective complaints.  In addition, the finding of disability is an issue reserved for the Commissioner.

*Id.* at p. 19.

The Commissioner is bound to consider "claimant's own statement of what he or she is able or unable to do," but he or she is not bound to credit those statements.  *Moss,* 2008 U.S. Dist. LEXIS 71506, at *16.  As the Commissioner observed, "good reasons" exist for questioning Plaintiff's self-reported subjective complaint.  *Plaintiff's Objections*, at p. 19.  As noted elsewhere in this Opinion, Plaintiff's statements often appear contradictory.  She also has an obvious interest in obtaining a ruling of disabled.  The Court does not intend to suggest that Plaintiff has been untruthful, but it does believe that some level of skepticism by the Commissioner, and the ALJ, may be justified given the nature of the proceeding.

A similar premise holds true for the record as a whole.   The Commissioner "must consider the entire record, including all relevant medical and nonmedical evidence," but there is no requirement that he or she accord all evidence equal weight.  *Id.*  The Court believes that the evidence Plaintiff cites was in fact considered, although much of it ultimately was accorded diminished weight.  Substantial evidence exists to support the conclusion that Plaintiff has the residual capacity to maintain employment, with the aforementioned limitations.  Moreover, the relevant law was correctly applied.  If the Court were to question the credibility determinations made by the Commissioner, it would usurp a role not reserved to it.  Such determinations are properly reserved to the Commissioner, and the Court refuses to disturb them.

**E. Hypothetical Question**

Plaintiff argues that "the ALJ did not present to the vocational witness all of the claimant's severe impairments and resulting limitations and restrictions supported by the record." *Plaintiff's Objections*, at p. 18.  According to Plaintiff, the posed hypothetical question ignored evidence of Plaintiff's mental and intellectual limitations, particularly those allegedly found by her treating psychiatrist and the two psychologists who evaluated Plaintiff.  The question at issue is:

> [A]ssume an individual of the Claimant's age, education, and work experience who has a [RFC] for light work, nonexertionally limited to routine repetitive tasks involving only incidental public contact and no exposure to hazards.  Are there any unskilled jobs you can identify that she can do?

*Transcript of ALJ Proceedings,* at p. 295.  In response, the vocational witness identified multiple "light unskilled jobs" that Plaintiff could perform.  *Id.*

Because "'[i]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular Claimant's impairments and abilities[,] presumably [the expert] must study the evidence of record to reach the necessary level of familiarity.'"  *Russell v. Barnhart,* 58 Fed. Appx. 25, 30 (4th Cir. 2003) (quoting *Walker v. Bowen,* 889 F.2d 47, 51 (4th Cir. 1989)).  Hypothetical questions must fairly include all severe impairments, but they need not reflect impairments that are non-severe or not supported by the record.  *Id.* at 30.

In this case, the Court believes that the ALJ's hypothetical question included Plaintiff's severe impairments by its reference to her RFC.  RFC is arrived at only after "consider[ation] [of] the entire record, including all relevant medical and nonmedical evidence."  *Moss,* 2008 U.S. Dist. LEXIS 71506, at *16.  Plaintiff contends that the Commissioner ignored the reports of the psychiatrist and psychologists who treated or evaluated Plaintiff, but in determining Plaintiff's RFC, these were in fact considered.  Moreover, it is presumed that the vocational witness was familiar

-18-

with the evidence of the case.  *Russell,* 58 Fed. Appx. at 30.  The ALJ was not required to repeat Plaintiff's severe impairments individually.  It is sufficient that he included and briefly explained Plaintiff's RFC in his question to the vocational witness.  The question was proper, and Plaintiff's objection to it should be denied.

### III.
### CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the Proposed Findings and Recommendation of the Magistrate Judge, **DENIES** Plaintiff's Motion for Judgment on the Pleadings, **GRANTS** the Commissioner's Motion for Judgment on the Pleadings,  **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.


ENTER: March 4, 2009


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE